FILED

2017 Feb-07  AM 10:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **TINCY CARNEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:16-cv-0781-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Tincy Carney brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  *See also* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff filed her application for DIB and SSI benefits on June 21, 2011, alleging an onset date for her disability of March 15, 2010. (R-19). The Social Security Administration ("SSA") initially denied her application on July 8, 2011 and again on August 16, 2011. (R-120-23). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on September 2, 2011. (R-168). The ALJ held a hearing on August 15, 2012. (R-93-119). The ALJ issued an unfavorable decision on September 26, 2012. (R-124-49). Plaintiff appealed the decision and on February 7, 2014, the Appeals Council remanded the case back to the ALJ. (R-150-54). A

different ALJ held a second hearing on September 10, 2014. (R-54-92). The second ALJ issued his unfavorable decision on January 29, 2015. (R-15-53). The Appeals Council denied review on April 19, 2016. (R-1-6).

Plaintiff was 48 years old at the onset of her alleged disability, yet had aged past 50 at the time of the final decision. (R-268). Plaintiff alleges disability on the following grounds: degenerative disc disease; depressive disorder; diabetes mellitus, type II; respiratory deficits; calcaneal spur in the left ankle; somatoform; hypertension; urinary tract infections; and a disorder not otherwise specified (NOS). (R-21). Plaintiff also complains of severe lower back pain and sciatica. (R-828-36). Dr. Henderson, Plaintiff's treating physician of twenty years, opined that Plaintiff can sit two hours and stand and walk less than one hour out of eight; that she can occasionally perform pushing and pulling movements and gross manipulation; that she can rarely climb ladders or stairs, perform fine manipulation, or reach, including overhead; that she can never bend, stoop, or work with or around hazardous machinery; and that she would miss work more than three times a month as a result of her disability. (R-828-39). Dr. Henderson also opined that Plaintiff's pain would cause her to become distracted from her tasks in a work environment and likely abandon them. (R-828-36). A July 15, 2010 x-ray showed evidence of equivocal spinal stenosis in addition to the previously mentioned degenerative disc disease. (R-561-637).

Based on the evidence of examining psychologist John R. Goff, Ph.D., Plaintiff has a full-score IQ of 79 and can read at a second grade level. (R-731-38). Dr. Goff views her as functionally illiterate and diagnosed her with a likely learning disability. (*Id.*). Plaintiff had to take an oral exam when testing for her driver's license rather than the traditional written test. (R-61). She also attested that her employer filled out all of her paperwork when Plaintiff had gainful

employment. (R-67). However, the State Claims Agency reported no discernible limitation in Plaintiff's "capacity for reading, understanding, coherency, concentration, or writing." (R-312). In that same report, the State Claims Agency noted that Plaintiff said she "did paper work—kept up with time cards" and completed reports and employed technical skills as a part of her previous job at a gas station. (*Id.*).

Plaintiff worked at a gas station for five years leading up to the onset date for her alleged disability. (R-65). The gas station came under new management in March 2010, at which point the new owner let Plaintiff go as a result of her lack of qualifications. (*Id.*). Plaintiff testified that the previous owner had kept her on the payroll as result of their longstanding friendship. (*Id.*). The previous owner felt that he could trust Plaintiff more than his other employees. (*Id.*). Plaintiff testified that she stopped working both because the new owner fired her and due to her increasing back pain. (R-66). Plaintiff stated under oath that she fell more often and more frequently around the time that the owner fired her and that she found it increasingly difficult to hold things. (*Id.*). Plaintiff made no attempts to work in the period following her firing, partially because she could not fill an application out on her own. (*Id.*). She also doubted that anyone would hire her given her prescription for Lortab. (R-63).

Plaintiff lives with her husband and has frequent contact with her daughter and her parents. (R-69). Plaintiff's daily activities include watching television, particularly *The Walking Dead*, folding clothes, and sleeping on her husband's recliner. (*Id.*). Her daughter, mother, and husband all occasionally take Plaintiff grocery shopping. (*Id.*). Plaintiff attended school through the eighth grade, after which she left to work at the behest of her stepfather. (R-61).  She does not possess a GED. (*Id.*). Plaintiff now walks with the support of a cane that Dr. Henderson prescribed for her in 2014. (R-62). Dr. Henderson also prescribed Plaintiff a back brace in 2012.

(R-68). Plaintiff takes insulin for her diabetes. (R-69-70). She claims that she experiences tingling pain and numbness from her diabetes. (R-70). Plaintiff also has had to frequently change her medication for diabetes and can only take her insulin intermittently because it makes her ill. (R-70-1).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).    Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R.

§ 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff meets the insured status requirements of the SSA through December 31, 2015. (R-21). He also found that Plaintiff has not engaged in substantial gainful activity following the onset period of March 2010 for her alleged disability. (*Id.*). The ALJ noted that Plaintiff has the following "severe" impairments: obesity; disc protrusion; degenerative disc disease and equivocal spinal stenosis, lumbar spine; some deterioration, thoracic spine. (*Id.*). He also observed that Plaintiff has the following "nonsevere" impairments: depressive disorder; diabetes mellitus, type II; respiratory deficits; calcaneal spur in the left ankle; somatoform; hypertension; history of recurring urinary tract infection of unclear etiology with some dysuria and pain. (*Id.*). The ALJ referenced her records suggesting kidney disease, but also noted that a specialist found no evidence that she suffered from that affliction. (*Id.*).

The ALJ highlighted the DSM IV, in use at the time of Dr. Goff's examination of Plaintiff, and its definition of malingering as:

1. "Medicolegal context for presentation (e.g. **the person is referred by an attorney to the clinician for examination**)

2. **Marked discrepancy** between the person's claimed stress or disability and the objective findings…"

(R-22) (emphasis in original).  The ALJ concluded that the above "guidance" is relevant here because Plaintiff's attorney sought psychological examination on the eve of the hearing. (R-22). The ALJ also noted that he interprets the second "prong" of the DSM's definition as pertaining to differences observed between the objective medical record and the opinion of a third party consultant. (*Id.*). Based upon this interpretation, and to assess issues related to malingering, the ALJ found it appropriate to review Plaintiff's scholastic record while she attended school. (*Id.*). Plaintiff's educational record does not show any evidence of special education. (*Id.*). Although her grades were unexceptional, Plaintiff did not fail any classes in the sixth grade and achieved her highest grade in writing. (*Id.*). Plaintiff achieved a C in English in the seventh grade, although she followed this performance with an F in the same subject the subsequent year. (*Id.*). However, she made up that F in summer school, where she passed both English and Mathematics. (*Id.*). The ALJ found this educational record to stand in stark contradiction of Dr. Goff's finding that Plaintiff is illiterate. (*Id.*).

The ALJ also looked at Plaintiff's reading capacity and other record evidence. (R-23). The ALJ noted that Plaintiff "pays bills, counts change, handles checks, money orders and a savings account." (*Id.*). He similarly cited a functional report that a third-party filled out on her behalf in 2011 that makes no mention of any deficit in mental activities or memory. (*Id.*). The ALJ also considered Plaintiff's work experience. (*Id.*). In particular, he pointed to Plaintiff's testimony that she "[did] paperwork—like keep up with time cards" and that she "relied on technical knowledge or skills" and wrote and completed reports. (*Id.*). Based on the aforementioned

6

evidence drawn from the record, the ALJ found no evidence of any limitation in Plaintiff's mental capacities. (*Id.*).

For these reasons, the ALJ afforded Dr. Goff's opinion and his testimony minimal weight finding it was "grossly inconsistent with [Plaintiff's] work activity…" (R-25). The ALJ determined that Dr. Goff failed to ask probing questions regarding the nature of Plaintiff's work history or examine her assertion that she had worked as a "clerk." (*Id.*). As a result of this, the ALJ concluded that Dr. Goff's views were flawed and "emphatically reject[ed] Dr. Goff's opinion." (R-26).  The ALJ also considered the full extent of Plaintiff's mental limitations, citing her daily living, social functioning, concentration, and lack of episodes of decompensation. (R-26-27). He cited a portion of Plaintiff's testimony in which she acknowledged she can take care of herself, do some light shopping, prepare easy meals, drive, and manage finances. (R-26). The ALJ also took into consideration clear evidence of Plaintiff's ability to form friendships and maintain relationships, as her friendship with her employer and her tight familial bonds indicate. (*Id.*). And, he noted her hobbies of golfing and crocheting, along with other tasks she performed that show she is able to concentrate. (*Id.*).

After review, the ALJ concluded that Plaintiff does not have an impairment (or combination of impairments) that meets or medically exceeds the severity of the listing. (R-27). He further concluded that Plaintiff possesses a RFC to perform light work except that Plaintiff can sit at least two hours without interruption and a total of six hours a day. (*Id.*). The ALJ found that Plaintiff can use her upper extremities to reach overhead and can frequently use lower extremities for foot controls. (*Id.*). She can occasionally kneel and crouch, and climb ramps and stairs. (*Id.*). However, she cannot climb ladders, ropes, poles or scaffolds, and cannot work operating hazardous machinery. (R-28). The ALJ found that Plaintiff can operate motorized

vehicles. (*Id.*). The ALJ also determined that one could reasonably expect Plaintiff's medically determinable impairments to cause her alleged symptoms; however, he found some issues with her credibility. (R-30). The ALJ cited Plaintiff's demeanor while under questioning at the hearing, saying that the "way she answered questions...imparted the impression that she was exaggerating her limitations." (R-31). The ALJ also questioned Plaintiff's credibility because of conflicting information regarding her education, particularly her educational records which show she passed reading and writing related classes. (*Id.*). The ALJ also strongly questioned whether Plaintiff would have quit working had her new employer not fired her, and noted that Dr. Henderson had only prescribed Plaintiff a cane in 2014—four years after the onset date of the alleged disability. (R-27-31). The ALJ gave Dr. Henderson's opinion minimal weight despite a longstanding relationship with Plaintiff.  This was due to the lack of similarity of his views and the objective medical record. (R-45).

After a thorough review, the ALJ concluded that Plaintiff can perform her past work as a cashier-clerk, and thus does not qualify for SSI or DIB for the adjudicated period under the Act. (R-29-30).

## III.   Plaintiff's Argument for Reversal

Plaintiff offers three arguments for reversal.  (*See generally* Doc. #9). First, she argues that the ALJ erred in assigning minimal weight to Dr. Henderson's opinion. (*Id.* at 2).  Second, she asserts that the ALJ erred in rejecting Dr. Goff's testimony. (*Id.*).  Finally, she contends that the ALJ's decision was not based on substantial evidence because the ALJ based much of his ruling on assumptions and speculation.  (*Id.*).

IV.    **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

V.    **Discussion**

After careful review, the court concludes the ALJ's decision is supported by substantial evidence and the law was correctly applied.

a.  **The ALJ weighed Dr. Henderson's opinion appropriately**

Plaintiff first argues that the ALJ erred in affording the opinion of Dr. Henderson minimal weight. (Doc. #9 at 3). Plaintiff summarizes Dr. Henderson's Medical Source Statement (Physical) from August 12, 2014 as the following:

> He stated that she could sit two hours and stand or walk less than one hour in an eight-day workday. He stated she could occasionally lift and/or carry up to ten pounds and frequently one pound. He stated she could occasionally perform pushing and pulling movement (arm and/or leg controls), gross manipulation (grasping, twisting, and handling), and operate motor vehicles. He stated she could rarely climb stairs or ladders, balance, perform fine manipulation (finger dexterity), or reach, including overhead. He stated she could never bend, stoop, or work with or around hazardous machinery. He stated he would anticipate her being absent from work more than three times a month because of her impairments and/or treatments. He stated these limitations were normally expected for her diagnoses and the diagnoses were confirmed by objective medical findings. He stated the basis for these restrictions was degenerative disc disease of the lumbar spine. (Tr. 826).

Plaintiff highlights that Dr. Henderson served as her treating physician for twenty years (Doc. #9 at 3), notes that the evidence from Dr. Henderson dates back to May 14, 2009 (nearly a full year before the onset date for the alleged disability) (*id.*), and criticizes the ALJ for affording Dr. Henderson's opinion little weight.  She notes that "substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to disregard them." *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996), citing *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

The ALJ found that Dr. Henderson's opinion could not be reconciled with the objective record as a whole creating sufficient reason to dismiss or minimize that opinion. (R-45). In support of this finding, the ALJ cited Plaintiff's March 4, 2014 hospital visit following a reported fall. (*Id.*). The record pertaining to this particular incident shows no acute distress and the x-ray of the shoulder rendered a negative result. (R-750-53). The ALJ further pointed to an emergency

room visit on June 6, 2014, during which Plaintiff complained of a kidney infection. (R-45). The record from this event notes no "muscle pain, muscle weakness, joint pain, joint swelling…joint stiffness…[or] any musculoskeletal difficulty." (R-799-825). Both of these hospital trips occurred four years after the supposed onset date of the alleged disability. (*Id.*). A hospital record from August 12, 2014, when Plaintiff complained of stress, described Plaintiff as "alert, oriented, and cooperative." (R-832). Plaintiff's "affect was normal…her judgement was not impaired…[and] her insight was not impaired." (*Id.*).

The ALJ also analyzed records from 2010 through 2013 in further support of his decision to grant Dr. Henderson's opinion minimal weight. (R-46). The ALJ cited an Immediate Care Family Clinic visit on September 8, 2010 that focused on Plaintiff's knee pain. (R-430-33). The x-ray depicted a knee that functioned normally. (*Id.*). The ALJ cited at least two other instances in which a hospital admitted Plaintiff only to find that her diagnosable impairments did not match with the severity of limitation that both she and Dr. Henderson alleged. (R-427-30, 580-82). The ALJ also pointed to Plaintiff's supposed diagnosis for a cane in February of 2014, nearly four years after her disability allegedly began. (R-62). Dr. Henderson testified in his Medical Source Statement from August 12, 2014, that Plaintiff did not require an assistive device in order to move. (R-837-39). Thus, the ALJ found that Dr. Henderson's opinion does not fit with the established record. (R-46).

Plaintiff argues that the ALJ mis-analyzed the evidence in his decision to afford Dr. Henderson's opinion minimal weight. (Doc. #9 at 5). Plaintiff argues that the ALJ cited medical records pertaining to "shoulder injury and kidney infection" which had nothing to do with Plaintiff's supposed disability. (*Id.*). Plaintiff advances a similar argument pertaining to the ALJ's treatment of knee pain and urinary tract infections, "which again had nothing to do with

the objectively verified degenerative disc disease and protruding disc." (*Id.*). Plaintiff contends the evidence the ALJ cited is insufficient: "eight individual visits, apparently attempting to outweigh the rest of the 45 visits to Dr. Henderson for lower back pain." (*Id.*).

Despite Plaintiff's arguments to the contrary, the ALJ's reasoning is sound. In addition, the ALJ has pointed to substantial evidence in the record in support of his decision to minimize the weight afforded to Dr. Henderson's opinion. The ALJ cited treatment records dating from 2010 through 2014 that fail to show Plaintiff in acute distress, fail to show musculoskeletal deficiencies, fail to show significant weakness or muscle pain, and fail to show anything worse than "moderate" pain. (R-45-6). These same records describe Plaintiff's low back pain as "controlled." (Doc. #10 at 10). Also, as mentioned above, the ALJ also has cited substantial evidence that undermines the notion of Plaintiff's mental impairments. (R-45-46). Notwithstanding medical records such as the one dated June 6, 2014 (which focused primarily on unrelated pain), these records describe symptoms related to Plaintiff's alleged disability and indicate her condition is less severe than how she and Dr. Henderson have characterized it. (R-799-825).

The medical opinion of state agency consultants Thomas Jeffcoat, M.D. and Samuel Chastain, M.D. also support the ALJ's decision to afford Dr. Henderson's opinion minimal weight. State agency consultants, given their expertise with Social Security disability, may find their opinions entitled to significant weight provided that those opinions are consistent with the record. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *3. These two consultants rendered a RFC that much more closely matches the entire record than Dr. Henderson's; therefore, the ALJ afforded their opinion greater weight. (R-43, 485-92, 509-16). Drs. Jeffcoat and Chastain opined that "Plaintiff could occasionally lift and/or carry up to 20

pounds; frequently lift and/or carry 10 pounds; stand/walk for a total of about six hours in an eight-hour workday; and sit for a total of about six hours in an eight-hour workday (Tr. 43, 486, 510)." (R-486, 510).

Given the vast difference between the RFC ruling assigned by the State Agency consultants and that of Dr. Henderson, and given the substantial reasoning offered for affording Drs. Jeffcoat and Chastain significant weight, the ALJ was justified in granting minimal weight to the testimony of Dr. Henderson.

### b.  The ALJ properly rejected Dr. Goff's testimony

Next, Plaintiff takes issue with the ALJ's decision to reject Dr. Goff's opinion. Plaintiff notes that Dr. Goff's testimony gave Plaintiff a "verbal comprehension score of 68, perceptual reasoning score of 81, working memory score of 74, processing speed score of 102, and full scale of 76." (R-734). Dr. Goff further diagnosed Plaintiff with a learning disability for reading and described her as functionally illiterate. (*Id.*). Plaintiff possesses a second grade level reading and spelling skills and third grade math skills according to Dr. Goff. (R-736). He further diagnosed Plaintiff with the following: Somatoform Disorder; Pain Disorder; Reading Disorder; and Borderline Intellectual Functioning. (*Id.*). The ALJ rejected Dr. Goff's opinion both because he found it inconsistent with the record and because Plaintiff's counsel obtained Dr. Goff's examination on the eve of the hearing despite a lack of evidence suggesting any mental impairment. (R-43-44). Plaintiff claims that the ALJ relied on personal biases in rejecting Dr. Goff's opinion and, as such, his decision constitutes a legal error. (Doc. #9 at 7). The court disagrees.

The ALJ pointed to substantial evidence in making his decision to reject the testimony of Dr. Goff. The ALJ had no duty to grant a one-time examiner such as Dr. Goff any special

weight. *Eyre v. Comm'r, Soc. Sec. Admin.,* 586 F. App'x 521m 523 (11th Cir. 2014). However, an ALJ must weigh all medical opinions "based on relevant factors." (Doc. #10 at 17). This includes the question of whether or not the testimony at issue remains consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c). And it was on this basis that the ALJ dismissed Dr. Goff's opinion. As the ALJ noted, "neither Dr. Henderson nor Dr. Hensleigh encountered anything indicative of a mental impairment" while they treated Plaintiff. (R-44). The ALJ also pointed to Plaintiff's own admission that she has no history of mental health care and highlighted Plaintiff's testimony that her previous employment included maintaining paperwork. (*Id.*). The ALJ found this (and other) evidence contradictory to Dr. Goff's assertion that Plaintiff does not have the ability to read beyond a second grade level. (*Id.*).

The ALJ highlighted Dr. Goff's failure to thoroughly examine Plaintiff's work history. (R-25). In his eleventh hour review, Dr. Goff did not ask Plaintiff probing questions about the nature of her work when at the gas station for five years. (R-731). Yet, in a Disability Report, Plaintiff testified to operating the cash register, completing paperwork, maintaining time cards, employing technical skills, and completing written reports. (R-311). Although the ALJ may have mistakenly assumed that Plaintiff closed out the register (Plaintiff testified that the owner did that) the work activities Plaintiff did perform still significantly contradict Dr. Goff's testimony. (R-81). Had Dr. Goff asked Plaintiff questions about these matters would his opinion have been different?  The answer to this question is not clear.  But what is clear is that he did not ask the questions.

The ALJ further found Dr. Goff's opinion contrary to Plaintiff's educational records. As the ALJ noted, Plaintiff maintained unexceptional yet passing grades throughout her time in formal education—a result that contradicts Dr. Goff's assertion of Plaintiff's illiteracy. (R-22).

Plaintiff passed all of her subjects in sixth grade, including reading and spelling, while scoring her highest grade (albeit only a C) in writing. (R-358). Plaintiff's seventh grade results proved similar to those of her sixth grade year - she again passed English classes. (*Id.*). Plaintiff clearly experienced greater difficulty in eighth grade, failing English, but she subsequently attended summer school and passed that class. (R-358-359). A record of solid, albeit mediocre, accomplishment in reading and writing classes does not conform to Dr. Goff's findings of illiteracy and a learning disability for reading.

In addition to Plaintiff's employment and educational background providing the ALJ with ample reason to reject Dr. Goff's testimony, Plaintiff's daily activities similarly undermine any notion of her suffering from a mental impairment. According to the function report that Plaintiff's close friend, Hope Flowers, filled out, Plaintiff:

> took care of her husband, mother, and father. She took them to doctor's appointments. The claimant fed and watered the pets/other animals with her husband's help. The claimant did not have any problems with personal care…The claimant did not need any special reminders to take care of personal needs and grooming. The claimant did not need help or reminders taking medicine. The claimant prepared her own meals…on a daily basis. The claimant was able to do light household chores…she spent four to five hours a day doing household chores….She walked, drove a car or rode in a car. She went shopping in stores. She used the computer to shop. She shopped for groceries, household goods, and clothing…The claimant was able to pay bills, count change, handle a savings account, use a checkbook and use money orders.
> (R-42-43).

The ALJ noted that Plaintiff had previously played golf and only had to quit as a result of her physical impairments. (R-43). In addition, a person that truly exhibited the limitations that Dr. Goff mentioned (including illiteracy) would find it difficult to do such activities as online shopping. The ALJ thus rejected Dr. Goff's testimony on the grounds that it bears no relation to the established record and on the grounds that Plaintiff never complained of mental impairments. (R-22).  His conclusions in doing so are supported by substantial evidence.

c. **Substantial evidence supports the ALJ's decision**

Finally, substantial evidence supports the findings made by the ALJ in this case. Plaintiff characterizes the ALJ's opinion as filled with "misrepresentations, speculation, and assumptions" and asserts that the ALJ "erred in basing his decision on his own admitted assumptions and speculation, and on misrepresentation of the evidence." (Doc. #9 at 15). In support of this assertion, Plaintiff cites the ALJ's reliance on the Disability Report, in which Plaintiff lists herself as a "clerk." (Doc. #9 at 15-16). Plaintiff criticizes the ALJ for relying on this report as a claims representative at the SSA filled out the form, not Plaintiff herself. (Doc. #9 at 16). Plaintiff further criticizes the ALJ for insisting "on evidence that cannot exist." (*Id.*). Plaintiff also attacks the ALJ with respect to this statement:

> Observation of the claimant as she testified, her demeanor, the way she answered questions, and all other factors that go into assessing a witness' credibility, imparted the impression that she was exaggerating her limitations. (R-30-31).

(Doc. #9 at 18).  According to SSR 16-3p:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."

(SSR 16-3 p.).

But here is the flaw in Plaintiff's argument.  The burden of proof is on (and always remains on) the claimant in cases such as these. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a), (b); SSR 96-7p, 1996 WL 374186, at *2. If the objective medical evidence does not confirm the severity of Plaintiff's alleged symptoms -- and the ALJ has made clear in this case that it does not -- the ALJ bears the responsibility to "evaluate their intensity, persistence, and effect on the

claimant's ability to do work." The ALJ can rely on inconsistencies in past statements from Plaintiff or divergences between Plaintiff's statements and the record in doing so. 20 C.F.R. § 404.1529(c)(4). Moreover, the Eleventh Circuit has ruled that the ALJ has the responsibility to determine credibility and such findings will be upheld as long as substantial evidence supports the ruling.  The appropriate question related to the ALJ's determination "is not…whether ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.,* 421 F. App'x 935, 939 (11th Cir. 2011).

Because the ALJ's decisions in this case are well supported by substantial evidence, including Plaintiff's work history, educational background, and daily activities, this purported ground for reversal of his decision is due to be denied.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this February 7, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE